**PETER E. HEUSER, OSB No. 81128**
Email: heuser@khpatent.com
**ELIZABETH A. TEDESCO, OSB No. 05093**
Email: tedesco@khpatent.com
KOLISCH HARTWELL, P.C.
200 Pacific Building
520 S.W. Yamhill Street
Portland, OR  97204-1378
Telephone:  (503) 224-6655
Facsimile:   (503) 295-6679

**RODGER D. YOUNG, admitted** *pro hac vice*
Email: young@youngpc.com
**STEVEN SUSSER, admitted** *pro hac vice*
Email: susser@youngpc.com
YOUNG & SUSSER, P.C.
26200 American Drive, Suite 305
Southfield, MI 48034
Telephone: (248) 353-8620
Facsimile: (248) 353-6559

**ANTHONY P. CHO, admitted** *pro hac vice*
Email: acho@cgolaw.com
CARLSON, GASKEY & OLDS, P.C.
400 West Maple Road, 350
Birmingham, MI 48009
Telephone: (248) 988-8360
Facsimile: (248) 988-8363

Attorneys for Arthrex, Inc.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| **SMITH & NEPHEW, INC,** and **JOHN O. HAYHURST, M.D.**,<br><br>                              Plaintiffs,<br>            v.<br><br>**ARTHREX, INC.**,<br><br>                              Defendant. | Case No.  CV04-0029 MO<br><br>**ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RELATING TO WILLFUL INFRINGEMENT** |

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................2

III. LEGAL ANALYSIS ........................................................................................................4

    A. Standard Of Review ...............................................................................................4

    B. Arthrex Has Not Asserted The Advice-of-Counsel Defense In This Matter.........5

        1. Arthrex has not explicitly asserted the advice-of-counsel defense in any pleading or other paper filed with this Court.......................................................................5

        2. The communications revealed by John Schmieding were not legal in nature. ................6

        3. If any of the communications revealed by Mr. Schmieding are found to be legal in nature, Arthrex hereby agrees not to rely upon those communications as a defense at trial, and therefore continues to refrain from asserting the advice-of-counsel defense. ........................8

    C. Smith & Nephew Is Not Entitled to The Production of Any Communications Between Arthrex And Its Counsel Which Have Not Been Produced..............................................11

    D. Arthrex Will Disclose The Date Upon Which It First Learned of The Existence of The '557 Patent. ...............................................................................................11

    E. Arthrex Is Not Required To Reveal The Existence of Any Legal Opinions It Obtained Related To The '557 Patent Because Their Existence Is Privileged And Is Irrelevant To This Lawsuit, And Is Not Likely To Lead To The Discovery of Any Relevant Information................................................12

IV. CONCLUSION................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Sys. V. Medtronic, Inc.*, 265 F.3d 1294 (Fed. Cir. 2001) ......................4

*SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508 (D. Conn. 1976) ..........................................................8

*CFTC v. Weintraub,* 471 U.S. 343 105 S. Ct. 1986 (1985).............................................................9

*Feldberg v. Walters* 862 F.2d 622 (7th Cir. 1988)......................................................................7, 8

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) ...............................................5

*Genentech, Inc. v. Int'l Trad Comm'n*, 122 F.3d 1409 (Fed. Cir. 1997) ........................................4

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354 (Fed. Cir. 2006) .........................12

*In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) ............................ 4, 5, 10

*In re Pioneer Hi-Bred International, Inc.,* 238 F.3d 1370 (Fed. Cir. 2001) ..................................8

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337
(Fed. Cir. 2004)................................................................................................................. 5, 10, 12

*Transamerica Computer Company, Inc. v. International Business Machines, Inc.*,
573 F.2d 646, (9th Cir. 1978) ......................................................................................................5, 9

*Upjohn Co. v. U.S.*, 449 U.S. 383 (1981)........................................................................................4

**Statutes**

35 U.S.C. § 284-285.........................................................................................................................4

**Rules**

Fed. R. Civ. P. 26(b)(1)....................................................................................................................4

I.  **INTRODUCTION**

Plaintiffs Smith & Nephew, Inc. and John O. Hayhurst, M. D. (collectively, "Smith & Nephew") are trying to circumvent the attorney-client privilege and discover a broad range of documents otherwise protected by that privilege. To accomplish this, Smith & Nephew claims that it has forced defendant Arthrex, Inc. ("Arthrex") to assert the advice-of-counsel defense to willful infringement. This position suffers from a fatal flaw: Arthrex has not chosen to rely upon the advice-of-counsel defense to Smith & Nephew's charge of willful infringement. Consequently, Arthrex has not waived that privilege and Smith & Nephew cannot obtain the protected information that it demands.

At the center of this dispute is the deposition of John Schmieding, Arthrex's Secretary and General Counsel. In response to questions during his deposition as a representative of Arthrex, Mr. Schmieding testified about his technical and functional knowledge of the products relevant to this lawsuit, and conversations he had with other Arthrex officers regarding that knowledge. He also testified as to Arthrex's understanding of certain claim terms of the patent at issue. Mr. Schmieding refused to answer questions about any legal advice he gave to Arthrex as protected by the attorney-client privilege. He similarly refused to answer any questions about his own claim construction of the patent on the same grounds. In short, Mr. Schmieding did not reveal any privileged information during his deposition, and therefore Arthrex has not waived the attorney-client privilege.

Moreover, even if this Court finds that some of the information revealed by Mr. Schmieding was legal advice, Arthrex still does not intend to rely upon any such advice as a defense to willful infringement. Arthrex is not making any use of any such legal advice, and, therefore, it cannot be said that Arthrex is using the attorney-client privilege as both a sword and

Page 1 – ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL…

shield.  An unintentional revelation of legal advice, even if it occurred here, does not lead to a broad waiver of the attorney-client privilege so long as that legal advice is not used. Accordingly, Arthrex respectfully requests that the Court deny Smith & Nephew's Motion to Compel Discovery Relating to Willful Infringement.

## II.  FACTUAL BACKGROUND

This lawsuit arises from Smith & Nephew's claim that Arthrex has infringed U.S. Patent No. 5,601,557 (the "'557 patent"), and that it has done so willfully.  Arthrex specifically denies these allegations, but among its defenses to the charge of willful infringement, Arthrex has not chosen to include the advice-of-counsel defense.

Despite the fact that Arthrex is not relying upon the advice-of-counsel defense to willful infringement, Smith & Nephew has filed this Motion to Compel seeking information that is protected by the attorney-client privilege.  Specifically, Smith & Nephew is seeking the following:

1. Opinions of counsel communicated to, from, or within Arthrex relating to the infringement and validity of the '557 patent; and

2. Information relating when and how Arthrex first learned of the '557 patent, and what steps it took to avoid infringement once it learned of the patent.

[Smith & Newphew's Memorandum in Support of its Motion to Compel at 3].

Smith & Nephew asserts that it is seeking this information because of testimony it elicited from John Schmieding, Arthrex's Secretary and General Counsel, during his deposition. Mr. Schmieding appeared as Arthrex's representative pursuant to Fed. R. Civ. P. 30(b)(6) to testify as to Arthrex's studies or analyses of the infringement, validity, and enforceability of the '577 patent, among other things.  During that deposition, Mr. Schmieding repeatedly refused to answer questions on the grounds that the answers would reveal privileged information.

Page 2 – ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL…

[Declaration of Steven Susser in Support of Arthrex's Opposition to Plaintiffs' Motion to Compel Discovery Relating to Willful Infringement ("Susser Decl."), Exh. A at 33-34, 39-43, 48-53, 63-64]. Mr. Schmieding did disclose his technical and functional knowledge of the products at issue, and his layman's testing of those products using such common tools as a vice and a staple remover. [*Id.* at 84-93]. He reported the results of this testing, and what that testing revealed about the tested products when compared with the '557 patent, to Arthrex. [*See generally* Susser Decl., Exh. A, and at 67-69].

At the deposition, Mr. Schmieding was also asked about Arthrex's understanding of certain claim terms of the '557 patent. [*See id.* at 74-75, 78]. Discussions between counsel, during which Arthrex's counsel routinely objected to any legal claim construction by Mr. Schmieding as privileged, made it clear that Mr. Schmieding was only answering these questions as to his understanding as Arthrex's designated representative, and would not reveal any legal advice he provided to Arthrex on those matters. [*Id.* at 117-118]. In short, Mr. Schmieding never intended to disclose any privileged information whatsoever during his deposition testimony. [Declaration of John Schmieding in Support of Arthrex's Opposition to Plaintiffs' Motion to Compel Discovery Relating to Willful Infringement ("J. Schmieding Decl.") at ¶ 6].

Despite these facts, Smith & Nephew claims that Arthrex has now asserted the advice-of-counsel defense and waived the attorney-client privilege, and that it is therefore entitled to the production of any responsive documents previously withheld as privileged. Arthrex responded that it was still not relying upon that defense, that elicited testimony is not enough to raise it, and that Arthrex had otherwise fully responded to Smith & Nephew's discovery requests. Unhappy with that response, Smith & Nephew filed this Motion to Compel.

**III.    LEGAL ANALYSIS**

Smith & Nephew has requested that the Court compel the production of a broad range of documents, including the opinions of Arthrex's in-house counsel, outside patent counsel, and trial counsel on the issues of infringement, validity, and enforceability, when and how Arthrex learned of the '557 patent, and whether Arthrex sought the opinion of counsel as a result. Arthrex responds as detailed below.

**A.    Standard Of Review**

Smith & Newphew's Motion to Compel involves the question of whether the advice-of-counsel defense was raised to a charge of willful patent infringement.  It further involves whether the attorney-client privilege has been waived.  Because these questions arise in the context of patent litigation, particularly as they relate to the defense to a charge of willful patent infringement, the law of the Federal Circuit controls these questions.  *See In re Echostar Communications Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006). *See also Advanced Cardiovascular Sys. V. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001) ("Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law.").  Because a remedy for willful patent infringement is specifically found in the Patent Act, 35 U.S.C. § 284-285, related discovery questions necessarily involve issues of substantive patent law.  *Echostar*, 448 F.3d at 1298.

In general, a party may obtain discovery of any matter that is relevant and not privileged. Fed. R. Civ. P. 26(b)(1).  Attorney-client communications are among those things designated as privileged.  *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981); *Genentech, Inc. v. Int'l Trad Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997).  Waiver of the privilege is at the discretion of the client.

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004).  Waiver must also be voluntary.  *Transamerica Computer Company, Inc. v. International Business Machines, Inc.*, 573 F.2d 646, 651 (9th Cir. 1978).  Once a party chooses to waive the privilege, that waiver extends to all documents relating to the same subject matter "out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005).

### B.   Arthrex Has Not Asserted The Advice-of-Counsel Defense In This Matter.

#### 1.   Arthrex has not explicitly asserted the advice-of-counsel defense in any pleading or other paper filed with this Court.

In support of its efforts to obtain any opinions of Arthrex's counsel, Smith & Nephew relies heavily upon the Federal Circuit's recent decision in *In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006).  A fundamental premise of that case was that the alleged infringer had asserted the advice-of-counsel defense to willful infringement.  *Id*. at 1298.  That is simply not the case here.  *Echostar* is not applicable to this case because, as explained below, Arthrex is not relying upon any legal advice as a defense to Smith & Nephew's claims of willful infringement.  To the extent that this Court determines that any filing or conduct on Arthrex's behalf has implicitly asserted such a defense, Arthrex hereby withdraws that defense.  Because *Echostar* was based upon the rationale of determining the accused infringer's state of mind, and the accused infringer in *Echostar* was asserting the advice-of-counsel defense to prove that it did not infringe willfully, *Echostar's* holdings have no place where that defense is not asserted.  *Id*. At 1298.

## 2. The communications revealed by John Schmieding were not legal in nature.

The specific testimony that Smith & Nephew elicited from John Schmieding was either technical in nature or was the understanding of Arthrex as to the meaning and import of some '557 patent terms. When answering those questions, Mr. Schmieding was not acting in his capacity as a lawyer. Consequently, no privilege was asserted.

Mr. Schmieding has a technical and functional understanding of Arthrex's products. [J. Schmieding Decl. at ¶ 2-3]. He also has a technical and functional understanding of the competing products, such as those manufactured by Smith & Nephew. [*Id.* at ¶ 4]. Shortly after Smith & Nephew filed this lawsuit against Arthrex, Mr. Schmieding used this knowledge to perform a comparative investigation between Smith & Nephew's and Arthrex's products. [Susser Decl., Exh. A at 84-93; J. Schmieding Decl. at ¶ 3]. To perform this analysis, Mr. Schmieding visually looked at the products, manipulated them by hand, and performed some layman's tests using common tools such as a vice and a staple remover. *Id.* As a result of these tests, Mr. Schmieding was able to determine whether Arthrex's products functioned in a particular manner. In essence, Mr. Schmieding was acting as an engineer or technician, not as an attorney.

Mr. Schmieding then discussed the outcomes of these tests with Arthrex. [Susser Decl., Exh. A at 67-69]. Using his technical knowledge, he also advised Arthrex whether Arthrex's accused products functioned in the manner contemplated by the patent, at least to his technical and functional understanding of the patent. [J. Schmieding Decl. at ¶ 4]. Mr. Schmieding gave deposition testimony on this topic. [Susser Decl., Exh. A at 67-69]. Throughout this portion of Mr. Schmieding's deposition, Mr. Schmieding repeatedly refused to reveal any legal advice that

he provided to Arthrex, because that advice was covered by the attorney-client privilege. [*Id.* at 33-34, 39-43, 48-53, 63-64, 117-118].

Later in his deposition, Mr. Schmieding also testified as to Arthrex's understanding of the terms used in the claims. [Susser Decl., Exh. A at 74-75, 78]. He was not testifying as a patent attorney, and objections were made clarifying that Mr. Schmieding was not being asked to construe the claim terms in a legal sense. [*Id.* at 117-118]**.** Instead, he was simply testifying as to his understanding of those terms, as Arthrex's 30(b)(6) representative. [*Id.*; J. Schmieding Decl. at ¶ 8].

Federal courts have held that, when someone who is an attorney is acting in a non-legal capacity, his recommendations and communications are not protected by the attorney-client privilege. For example, in *Feldberg v. Walters*, an attorney served as the conduit between a firm of sports agents and a grand jury investigating the firm's activities. *Feldberg v. Walters,* 862 F.2d 622 (7th Cir. 1988). The attorney, on behalf of the firm, initially produced 51 contracts requested by the grand jury. *Id.* at 623. When the grand jury sought more contracts, believing that not all of them were produced, the attorney responded by producing six more contracts. *Id.* Believing that the firm may have been obstructing justice by withholding those six contracts in the first place, the grand jury subpoenaed the attorney, who refused to answer certain questions on the basis of the attorney-client privilege. *Id.* at 624.

The Seventh Circuit, in an opinion by Judge Easterbrook, found that the attorney was serving the corporation in two distinct capacities, finding as follows: "He was on the one hand its agent, a delivery boy in connection with documents; he was simultaneously the firm's attorney and undoubtedly had supplied legal advice to [the firm] with respect to [its] obligations under the … subpoena." *Id.* The court explained that these differing capacities were important; "[f]ile

clerks may be required to testify about their search for documents, but lawyers ordinarily may not be required to testify about facts they learned in confidence in the course of rendering legal advice." *Id.* The court further found that it was well-recognized that the attorney-client privilege is limited to legal topics. *Id.* at 626-27 (collecting sources). The court therefore held that the trial court was correct to compel answers to "mechanical" questions, but not to questions about legal advice. *Id.* at 628.

In this case, Mr. Schmieding, like the attorney in *Feldberg*, served his client in the role of officer and, to a lesser extent, technician, not that of patent counsel. Mr. Schmieding did conduct various mechanical tests on the devices, and compared them to one another from a functional or mechanical standpoint. He conveyed the results of these tests to Arthrex. In that role, Mr. Schmieding was a layman engineer, a mechanic, or a technician. He was not providing legal advice, and under the same analysis as that in *Feldberg*, his testimony would not have been subject to the attorney-client privilege. Logically, his recommendations were therefore not legal advice for the purposes of determining whether Arthrex has asserted the advice-of-counsel defense.[1]

> **3.    If any of the communications revealed by Mr. Schmieding are found to be legal in nature, Arthrex hereby agrees not to rely upon those communications as a defense at trial, and therefore continues to refrain from asserting the advice-of-counsel defense.**

In the event that this Court finds that some or all of the conversations revealed by John Schmieding were legal in nature, Arthrex withdraws any reliance upon the legal advice contained

---

[1] Similarly, Arthrex's designation of Mr. Schmieding as it's 30(b)(6) witness does not waive the attorney-client privilege. *In re Pioneer Hi-Bred International, Inc.,* 238 F.3d 1370, 1376 (Fed. Cir. 2001) ("Counsel is often a fact witness with respect to various events, and may testify on deposition by the opposing party as to such matters without waiver."). *See also SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 515 (D. Conn. 1976) (in patent-related antitrust action, an attorney may testify as to technical information without waiving the attorney-client privilege).

Page 8 – ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL…

within them. Arthrex did not voluntarily disclose privileged communications because Arthrex did not believe that those communications were of a legal nature, and therefore privileged. Because this is an instance where Arthrex truly can "unring the bell," Arthrex should be allowed to stipulate that it will not rely on any such advice as a defense to willful infringement at trial.[2]

In *Transamerica*, the Ninth Circuit considered whether the attorney-client privilege was waived when a party mistakenly disclosed privileged documents. The party had been under intense time-pressure to produce 17 million pages of documents, and had implemented numerous procedures to try to prevent any disclosure of privileged material. *Transamerica*, 573 F.2d at 459. Despite the party's best efforts, privileged documents were disclosed. *Id*. The Ninth Circuit did not find that this disclosure constituted a waiver, because the disclosure was not really voluntary. *Id*. at 651-52.

In this case, too, Arthrex acted to protect its privileged information. As described above, it objected routinely to questions which it thought would elicit privileged material. It believed in good faith that the testimony which was elicited was not privileged. Just as in *Transamerica*, the disclosure of privileged material was not voluntary, and therefore no further waiver of the attorney-client privilege should be found. [Declaration of Reinhold Schmieding in Support of Arthrex's Opposition to Plaintiffs' Motion to Compel Discovery Relating to Willful Infringement at ¶ 3-4].

---

[2] Moreover, the privilege belongs to the client, not to the lawyer. If the communications revealed by Mr. Schmieding were legal in nature, then he was acting in the role of attorney, and his client, Arthrex, would have to waive the privilege. A corporation may only waive privilege through its management, usually its officers and directors. *CFTC v. Weintraub*, 471 U.S. 343, 348, 105 S. Ct. 1986 (1985). Conversely, if Mr. Schmieding (as Arthrex asserts) was not giving legal advice during the revealed communications, but was instead acting as an officer of Arthrex (again, as Arthrex asserts), then there is no privilege to waive as to those communications.

Page 9 – ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL…

Any contrary position would, in essence, allow Smith & Nephew to dictate the scope of Arthrex's attorney-client privilege and choice of defenses. Smith & Nephew is asserting that the advice-of-counsel defense has been raised because of answers a representative of Arthrex gave at his deposition—*testimony elicited by Smith & Nephew, not offered by Arthrex*. Those answers were given because Mr. Schmieding and his counsel understood that they did not disclose legal advice. By contrast, Mr. Schmieding repeatedly refused to answer other questions at his deposition because those answers would have revealed privileged legal advice. Therefore, Mr. Schmieding did not intend to disclose any privileged legal advice, but would have objected to and prevented that disclosure had he and the people involved believed that the communications disclosed in his testimony were legal in nature. Smith & Nephew cannot use the answers to deposition questions to force Arthrex to rely upon a defense it has not chosen. *Echostar*, 448 F.3d at 1301; *Knorr-Bremse*, 383 F.3d at 1345.

Therefore, the most that has occurred here is that some legal advice was disclosed, not because of any intentional decision of Arthrex, but because the witness and the attorneys did not believe the conversations disclosed were of a legal nature. Arthrex has stipulated that it will not rely upon any legal advice or make any use of it trial, if indeed any was revealed by Mr. Schmieding's deposition testimony. Therefore, there is no unfair use of any legal advice which must be remedied by a broad waiver of the attorney-client privilege. The advice-of-counsel defense is simply not asserted when a witness unintentionally discloses legal advice.[3]

---

[3] Again, Arthrex does not believe that any of the advice given by Mr. Schmieding was legal in nature. This is simply an alternative argument in the event that this Court fins that some or all of his advice was legal.

Page 10 – ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL…

### C. Smith & Nephew Is Not Entitled to The Production of Any Communications Between Arthrex And Its Counsel Which Have Not Been Produced.

For the reasons stated above, Arthrex has not waived the attorney-client privilege because of the deposition testimony of John Schmieding. Moreover, the privilege belongs to the client, not to the attorney, *Knorr-Bremse*, 383 F.3d at 1345, so that if any legal advice was disclosed by Mr. Schmieding, it was not intended by Arthrex and it was not authorized by Arthrex.[4] While Mr. Schmieding's testimony to legal advice, if any, may not be "un-said," Arthrex has already stipulated that it will not rely upon it as a defense to Smith & Nephew's charge of willful infringement. As a result, there has been no waiver of the attorney-client privilege in this matter.

Without such a waiver, Smith & Nephew is not entitled to the documents it requests. All responsive documents that are not privileged have already been disclosed, and Arthrex has not and does not now waive privilege as to any remaining documents in its possession. Therefore, Smith & Nephew's request should be denied.

### D. Arthrex Will Disclose The Date Upon Which It First Learned of The Existence of The '557 Patent.

Smith & Nephew has also requested that this Court compel Arthrex to disclose when and how it first learned of the '557 patent. Arthrex agrees to reveal that it first learned of the '557 in approximately December, 2000. As explained above, Arthrex has not waived the attorney-client privilege, and therefore asserts that privilege in refusing to disclose how it first learned of that patent.

---

[4] See footnote 2, *supra*. If it is found that the communications contained legal advice, then Mr. Schmieding was the attorney as to that advice, and Arthrex was the client. Therefore, only Arthrex, and not Mr. Schmieding, could waive the attorney-client privilege. If those communications did not contain legal advice, then there is no privilege to waive as to those communications.

### E. Arthrex Is Not Required To Reveal The Existence of Any Legal Opinions It Obtained Related To The '557 Patent Because Their Existence Is Privileged And Is Irrelevant To This Lawsuit, And Is Not Likely To Lead To The Discovery of Any Relevant Information.

Finally, Smith & Nephew has requested that Arthrex reveal whether it sought any opinions of counsel relating to the '557 patent. As explained above, Arthrex has not waived the attorney-client privilege, and therefore refuses to provide any such opinions because they would be protected by that privilege. Whether such opinions were sought is also privileged. As the Federal Circuit recognized in *Knorr-Bremse*, "[t]here should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney." *Knorr-Bremse,* 383 F.3d at 1344. While the *Knorr-Bremse* court specifically did not decide the question of whether seeking an opinion of counsel was privileged, *id*. at 1346-47, the principles recognized by the court suggest its answer. If the fact that an opinion of counsel was sought is not privileged, then a "risk of liability" attaches to a party's choice to seek such an opinion, regardless of whether they will rely upon it at trial. The fact of seeking an opinion relating to a particular patent implicitly reveals some of the party's concerns, and if that opinion is not later revealed, then a finder-of-fact will be hard-pressed not to infer that the opinion was counter to the party's position. Such an inference is directly at odds with the central holding of *Knorr-Bremse* that such an inference is impermissible. 383 F.3d at 1344.

For similar reasons, the very existence of such opinions is irrelevant. In *Knorr-Bremse*, the Federal Circuit held that it was improper for the trier of fact to infer that any opinion as to infringement was negative if a party to a patent-infringement lawsuit fails to produce those opinions. *Id. See also Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed.

Page 12 – ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL…

Cir. 2006). Parties are now free to prove that they did not act willfully any way they see fit, and need not rely upon the opinion of counsel, even if obtained. Therefore, when a party is not asserting the advice of counsel as a defense to willful infringement, the existence of such opinions becomes irrelevant.

Under *Knorr-Bremse*, the existence of any such opinions could not be used by Smith & Nephew to argue that Arthrex acted willfully. Since Arthrex is not asserting the advice-of-counsel defense, the existence of any such opinions could not lead to discovery of their contents, as any such opinions remain privileged. Therefore, the existence of any such opinions is not relevant, and is not likely to lead to the discovery of any relevant information. Smith & Nephew's motion to compel this information should be denied.

## IV. CONCLUSION

For the reasons stated above, Arthrex requests that Smith & Nephew's Motion to Compel be denied.


DATED: October 9, 2006.                    YOUNG & SUSSER, P.C.


                                           /s/ Steven Susser
                                           Steven Susser
                                           Attorneys for Defendant