**Brenna K. Legaard, OSB No. 00165**
E-mail: brenna@chernofflaw.com
**Susan D. Pitchford, OSB No. 98091**
E-mail: sdp@chernofflaw.com
**CHERNOFF, VILHAUER, McCLUNG & STENZEL, LLP**
601 SW Second Avenue, Suite 1600
Portland, OR  97204
Telephone: (503) 227-5631
Fax: (503) 228-4373

**John M. Skenyon**, *Pro Hac Vice*
E-mail: skenyon@fr.com
**Mark J. Hebert**, *Pro Hac Vice*
E-mail: hebert@fr.com
**FISH & RICHARDSON P.C.**
225 Franklin Street
Boston, MA  02110
Telephone: (617) 542-5070

**Gregory R. Booker**, *Pro Hac Vice*
E-mail: booker@fr.com
**FISH & RICHARDSON P.C.**
919 N. Market Street, Suite 1100
PO Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| **SMITH & NEPHEW, INC.** and **JOHN O. HAYHURST, M.D.**, <br><br> Plaintiffs, <br><br> v. <br><br> **ARTHREX, INC.**, <br><br> Defendant. | Civil No. 04-00029-MO <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DECLARE THIS AN EXCEPTIONAL CASE AND TO AWARD ATTORNEY FEES UNDER 35 U.S.C. § 285** <br><br> **PATENT CASE** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I. BACKGROUND ......................................................................................................1

II. THE LEGAL STANDARD FOR ATTORNEY FEES UNDER 35 U.S.C. § 285..............1

    A. "Exceptional Case" ....................................................................................1

    B. Fees Awarded Against Counsel ................................................................3

III. THIS CASE IS EXCEPTIONAL AND ATTORNEY FEES SHOULD BE AWARDED ................................................................................................................4

    A. Willful Infringement ..................................................................................4

    B. Arthrex's And Its Counsel's Litigation Misconduct..................................5

CONCLUSION.....................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Afros S.P.A v. Krauss-Maffei Corp.*,
 671 F. Supp. 1402 (D. Del. 1987),
 *aff'd*, 848 F.2d 1244 (Fed. Cir. 1988) ..................................................................................2

*Beckman Instr., Inc. v. LKB Produkter AB*,
 892 F.2d 1547 (Fed. Cir. 1989) .........................................................................................2, 6

*Braley v. Campbell*,
 832 F.2d 1504 (10th Cir. (1987) ...........................................................................................4

*Brasseler, U.S.A I, L.P. v. Stryker Sales Corp.*,
 267 F.3d 1370 (Fed. Cir. 2001) ............................................................................................2

*Cargill, Inc. v. Sears Petroleum & Transport Corp.*,
 388 F.Supp.2d 37 (N.D.N.Y. 2005) ..................................................................................2, 6

*Depuy Spine, Inc., v. Medtronic Sofamor Danek, Inc.*,
 534 F. Supp. 2d 224 (D. Mass. 2008) ...............................................................................3, 7

*FMT Corp. v. Nissei ASB Co.*,
 1993 WL 588529 (N.D. Ga. 1993) .......................................................................................6

*In re Seagate Technology, LLC.*,
 497 F.3d 1360 (Fed. Cir. 2007) ............................................................................................4

*Jurgens v. CBK Ltd.*,
 80 F.3d 1566 (Fed. Cir. 1996) ..............................................................................................1

*Kloster Speedsteel AB v. Crucible, Inc.*,
 793 F.2d 1565 (Fed. Cir. 1986) ............................................................................................2

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
 383 F.3d 1337 (Fed. Cir. 2004) ............................................................................................2

*Mahurkar v. C.R. Bard, Inc.*,
 79 F.3d 1572 (Fed. Cir. 1996) ..............................................................................................1

*Medtronic Navigation, Inc., v. BrainLAB Medizinische Computersystems GMBH*,
 2008 WL 410413 (D. Colo. Feb. 12, 2008) ...........................................................2, 3, 4, 7

*Nilssen v. Osram Sylvania, Inc.*,
 528 F.3d 1352 (Fed. Cir. 2008) ............................................................................................2

*Rambus, Inc. v. Infineon Techs. AG*,
 318 F.3d 1081 (Fed. Cir. 2003) ............................................................................................2

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
  781 F.2d 198 (Fed. Cir. 1986) ..........................................................................................1

*Sensonics, Inc. v. Aerosonic Corp.*,
  81 F.3d 1566 (Fed. Cir. 1996)..........................................................................................2

*Standard Oil Co. v. American Cyanamid Co.*,
  774 F.2d 448 (Fed. Cir. 1995) ......................................................................................1, 2

*z4 Techs., Inc. v Microsoft Corp.*,
  No. 6:06-CV-142, 2006 WL 2401099
  (E.D. Tex. Aug. 18, 2006)  .............................................................................................2

**Statutes**

28 U.S.C. § 1927....................................................................................................................3, 4

35 U.S.C. § 285..................................................................................................................1, 2, 5

**INTRODUCTION**

The plaintiffs, Dr. John O. Hayhurst and Smith & Nephew, Inc., hereby move this Court to declare this an exceptional case pursuant to 35 U.S.C. § 285, and award the plaintiffs attorney fees and expenses.

On June 11, 2008, the jury found that Arthrex infringed claims 1-7 of the 5,601,557 patent ("the '557 patent") by making and selling four different suture anchors, which infringement was also found to be willful (*see* Dkt. No. 489). In addition, throughout both trials, and indeed the entirety of this action, Arthrex and its counsel engaged in serious and repetitive litigation misconduct. As a result, the Court should declare this an exceptional case and award the plaintiffs their attorney fees and expenses. The Court should also hold Arthrex and Arthrex's lead counsel jointly and severally responsible for any such award relating to the trials.

**I.    BACKGROUND**

The factual background for this motion is set forth in the Plaintiffs' Motion for Treble Damages Under 35 U.S.C. § 284, which is incorporated herein by reference.

**II.   THE LEGAL STANDARD FOR ATTORNEY FEES**

**A.    "Exceptional Case"**

Courts in "exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. A finding of willful infringement -- ***by itself*** -- is sufficient to justify a determination that the case is exceptional and an award of attorney fees is appropriate. For example, in *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 200 (Fed. Cir. 1986), the Federal Circuit noted that "[d]istrict courts have tended to award attorney fees when willful infringement has been proven, and this court has uniformly upheld such awards." *See also, Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed. Cir. 1995); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996). In fact, the Federal Circuit has cautioned that if a court does not award attorney fees in light of a jury verdict of willful infringement, it should provide an explanation for refusing such award. *Jurgens v. CBK Ltd.*, 80 F.3d 1566, 1572-73 (Fed. Cir. 1996); *S.C. Johnson, supra,* at 201.

An award of attorney fees may also be based on "the parties' conduct and **their counsel's trial tactics**, including evidence of bad faith." *Afros S.P.A v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1440 (D. Del. 1987), *aff'd*, 848 F.2d 1244 (Fed. Cir. 1988).[1]  In fact, "[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, **by themselves**, to make a case exceptional under § 285." *Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003); *Brasseler, U.S.A I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001); *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1574 (Fed. Cir. 1996); *see also, Standard Oil*, 774 F.2d at 455.  Thus, a finding that a case is exceptional may be based on litigation and trial tactics alone.  *See Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986) ("bad faith displayed in pretrial and trial stages, **by counsel or party**, may render the case exceptional under § 285"), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004); *z4 Techs., Inc. v Microsoft Corp.*, No. 6:06-CV-142, 2006 WL 2401099, at *22 (E.D. Tex. Aug. 18, 2006).[2]

Where, as here, there are multiple examples of improper litigation tactics, they may collectively support such a finding.  *See Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1359-60 (Fed. Cir. 2008) ("Appellants committed numerous acts during litigation that the court interpreted as litigation misconduct"); and *Beckman Instr., Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989) (affirming a district court's finding of an exceptional case based on a "**strategy** of vexatious activity.")  (Emphasis in original).

More specifically in patent cases, arguing improper claim constructions to the jury or making product-to-product comparisons for infringement purposes have been held to constitute misconduct that warrants an award of attorney fees under § 285.  *See, e.g., Medtronic Navigation, Inc., v. BrainLAB Medizinische Computersystems GMBH*, 2008 WL 410413 (D.

---

[1] It is our emphasis that is added here and throughout, unless otherwise noted.

[2] Litigation misconduct demeans the litigation process, making a fee award appropriate.  *See, e.g., Cargill, Inc. v. Sears Petroleum & Transport Corp.*, 388 F.Supp.2d 37, 77-79 (N.D.N.Y. 2005).

Colo. Feb. 12, 2008); *Depuy Spine, Inc., v. Medtronic Sofamor Danek, Inc.*, 534 F. Supp. 2d 224, 225 (D. Mass. 2008). In *Medtronic Navigation,* the court sanctioned Medtronic with an award of attorney fees and expenses because of misleading trial tactics, including "a strategy of giving superficial recognition to the court's claim construction rulings, while pressing its own interpretations of the claims." *Id*. at *6. With respect to infringement, Medtronic consistently made product-to-product comparisons as opposed to comparisons between the accused product and the properly construed claims. *Id*. at *6-7. In awarding attorney fees and expenses, the court explained that, particularly in complex patent cases, "[p]arties and counsel have an obligation to refrain from seeking to take advantage of these complexities by employing misleading strategies." *Id.* at *9. Similarly, attorney fees and a sanction ($10 million) were also awarded in *Depuy Spine* because the defendants "elected to proceed with a defense that threatened to mislead and confuse the jury." 534 F. Supp. 2d, at 226. In particular, in denying infringement, the defendants there "demonstrated a failure to accept the claim construction governing the case." *Id.* at 225.

In this case, not only was Arthrex found to willfully infringe the patent-in-suit, but its trial counsel was sanctioned for misconduct and excluded from the case. In fact, the misconduct included, but was not limited to, product-to-product comparisons for infringement purposes and arguing incorrect claim constructions to the jury.

### B. Fees Awarded Against Counsel

When a party's counsel is personally responsible for improper conduct, the Court may award fees personally against such counsel under 28 U.S.C. § 1927 as well as under the Court's inherent authority. *See Medtronic Navigation*, 2008 WL 410413 at *9-10. 28 U.S.C. § 1927 provides:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

As the *Medtronic Navigation* court explained, subjective bad faith is not a prerequisite to an award under the statute. Instead, the statute provides that "excess costs, expenses, or attorney's fees may be imposed against an attorney personally for conduct that, viewed objectively, manifests either intentional ***or reckless disregard*** of the attorney's duties to the court." 2008 WL 410413 at *9, *quoting Braley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir. 1987). Conduct that justifies such an award includes "reckless indifference to the law" or "when an attorney is cavalier or bent on misleading the court." *Medtronic Navigation,* 2008 WL 410413 at *9 (quoting cases). As a result of litigation misconduct, the *Medtronic Navigation* court found that Medtronic and its law firm had joint and several liability for a portion of BrainLAB's attorney fees and expenses. *Id.* at *4. As the court described, "[a]t trial, [the law firm's] conduct was in disregard for the duty of candor, reflecting an attitude of 'what can I get away with?'" *Id*. at *10.

In addition, the court's inherent authority also provides a separate basis to award attorney fees "against counsel who engage in abusive litigation conduct." *Id.* However, unlike § 1927, "[t]o impose an award of attorney's fees against counsel under the court's inherent powers, the court must find that the counsel's conduct constituted or was tantamount to bad faith." *Id.* In this case, such litigation misconduct by Arthrex's counsel, under both standards was, unfortunately, abundantly present.

### III.    THIS CASE IS EXCEPTIONAL AND ATTORNEY FEES SHOULD BE AWARDED

#### A.    Willful Infringement

This Court's jury instruction on the willfulness issue was based on *In re Seagate Technology, LLC.*, 497 F.3d 1360 (Fed. Cir. 2007), and the jury found by clear and convincing evidence that Arthrex willfully infringed the '557 patent. More specifically, based on this Court's jury instruction, in reaching that conclusion, the jury necessarily found that Arthrex sold the infringing anchors despite an objectively high likelihood that its actions infringed the '557 patent, and that this objectively high likelihood of infringement was either known or so obvious

that it should have been known to Arthrex." (Exhibit 1; Re-Trial Tr. at p. 1308, line 18 to p. 1309, line 2; *see also* Dkt. No. 487 (Jury Instruction No. 23)).[3]

The jury's willfulness finding as well as the underlying ones implicit in that finding were well supported. The evidence is that Arthrex not only knew of but completely ignored the '557 patent prior to the release of its first infringing product, the Bio-SutureTak, in December of 2001. The product was launched despite Arthrex's failure to obtain a single opinion of counsel on which it could actually rely in this case.

Apparently aware of this problem, Arthrex initially refused to disclose when it first learned of the '557 patent, and this Court had to order that discovery (Exhibit 7, p. 9, lines 9 to 13). In its Court-Ordered answer, Arthrex was forced to admit that it knew of the '557 patent in December of 2000, well before the introduction of the Bio-SutureTak anchor. But in disclosing that information, Arthrex also volunteered that it "believed" it did not infringe at that time (Exhibit 2). However, despite an unsuccessful attempt to "create an opinion" on which it might try to rely, Arthrex ultimately elected not to produce or rely on any opinion at all.[4] In addition, Arthrex also failed to produce any evidence of testing relating to the infringement question in that period. Indeed, it is undisputed here that the first Arthrex test relating to the infringement question was in May of 2004, after suit was filed (and Arthrex abandoned those tests when it changed its non-infringement defense in 2006). Consequently, there is no basis in this record for any alleged "good faith" belief of non-infringement by Arthrex prior to introduction of the Bio-SutureTak, and the jury's finding of willful infringement was legally and factually correct.

---

[3] All exhibits cited herein are attached to accompanying Combined Declaration of Brenna Legaard in Support of Plaintiffs' Motion for Treble Damages Under 35 U.S.C. § 284 and this Motion for Attorney Fees Under 35 U.S.C. § 285.

[4] Prior to the original trial, Arthrex tried to offer its in-house counsel's, John Schmieding's "nonlegal" noninfringement opinions, which all came *after* the products were launched, while withholding the "informal" and "formal" opinions it received from outside patent counsel allegedly before product launch. When this Court ruled that Arthrex must either disclose all opinions or no opinions (*see* Dkt. No. 100; Exhibit 7, transcript of December 21, 2006, p. 4, line 20 to p. 5 line 10), Arthrex elected not to produce any opinion at all. In fact, Reinhold Schmieding, Arthrex's President, submitted a declaration saying that Arthrex did not rely on John Schmieding's advice about patent issues (Exhibit 8).

### B.    Arthrex's And Its Counsel's Litigation Misconduct

Beyond the willfulness verdict, however, there has also been serious litigation misconduct by Arthrex, which further justifies an award of attorney fees and expenses to the plaintiffs in this case.  During the litigation itself, Arthrex completely reversed its non-infringement defense from one based on no deformation of its anchors to one based on the anchors always deforming (*see* Plaintiffs' Motion for Treble Damages).  In addition, Arthrex also raised a plethora of frivolous defenses, which is a factor supporting the award of attorney fees, *see Beckman Instr.,* 892 F.2d at 1552 and *FMT Corp. v. Nissei ASB Co.*, 1993 WL 588529 (N.D. Ga. 1993).  These defenses included Arthrex's laches, misuse and written description defenses, which were all dropped only as a result of the plaintiffs' motions *in limine* prior to the first trial (Dkt. Nos. 211, 234, Motion Nos. 1-3).

The same was true of Arthrex's ever-changing inequitable conduct defenses.  Its initial inequitable conduct defense, which it pled in its Answer (Dkt. No. 11 at p. 3), was directed to the Cullen patent for a tack to be used to hold a jaw shut on a corpse at a funeral home.  Arthrex realized this defense was frivolous, and Arthrex dropped it prior to the summary judgment phase of this case.  Instead, Arthrex pressed forward with its other inequitable conduct defense directed to a screw, which defense this Court dismissed on Summary Judgment, after it realized that Arthrex's counsel was mischaracterizing the applicable law.  (Dkt. No. 171, p. 115 line 22 to p. 116 line 8, p. 133 lines 10-13).[5]

In addition to those frivolous defenses, Arthrex also asserted frivolous claim construction arguments.  For example, with respect to the term "pressing" Arthrex argued that term was limited to steady pressure.  Had Arthrex ever bothered to read the '557 prosecution history, it would have known that its argument was futile.  The prosecution made crystal clear, particularly with respect to the Bivens reference which was "hammered" into the bone, that "pressing" had to include hammering.  (*See* Dkt. No. 117, pp. 23-24, and the exhibits thereto).  A similar Arthrex

---

[5] The assertion of frivolous inequitable conduct defenses supported the award of attorney fees in *Cargill,* 388 F.Supp.2d at 77-79.

argument related to the suture eyelet in the Bio-SutureTak anchor, where Arthrex argued that the suture wasn't "attached" to the Bio-SutureTak anchor because the eyelet was not part of the anchor. Arthrex should have known that this argument was factually baseless, since *all* of Arthrex's literature and internal documents stated that the eyelet *was* part of the anchor. (*See* Dkt. No. 116, p. 9 and Exhibits thereto).

But this pales in comparison to Arthrex's conduct at the two trials. There, Arthrex's counsel in both trials engaged in repeated and deliberate violations of this Court's rulings as well as trial "tactics" that were so outrageous that they ultimately resulted in the extraordinary sanction of revocation of his *pro hac vice* admission on June 11, 2008. (Dkt. No. 491). This came after the Court's warning – fully a year earlier – that misconduct would result in such a sanction. (Exhibit 5, Original Trial Trans., p. 233 line 1 to p. 235 line 24). The trial misconduct of Arthrex and its counsel is set out in detail in the Plaintiff's Motion for Treble Damages and in Exhibit 9 hereto, and it need not be repeated in full here. But, such misconduct included both improper infringement comparisons to the preferred embodiment of the '557 patent, including with a model that the Court eventually impounded in the first trial and repeated attempts to do such a comparison in the second (*see* Plaintiffs' Motion for Treble Damages), and it involved arguments that were inconsistent with the Court's claim constructions.[6] Both likely helped hang the jury in the first trial, necessitating the second trial here (where the misconduct not only continued but became worse).

For example, during the May 19, 2008 Pretrial Conference for the re-trial, Arthrex suggested that it was going to argue to the jury that outward movement by the anchor in bone was required to infringe the '557 patent. (Exhibit 10, Pretrial Conference Trans., p. 100, lines 9-20). Following that conference, plaintiffs briefed this issue and, at the May 29, 2008 Daubert hearing, the Court made it clear that it would not allow such an argument (Exhibit 11, Daubert Hearing Trans. p. 78, line 15 to p. 79, line 3):

---

[6] Such improper arguments supported the award of attorney fees in both *Medtronic Navigation,* 2008 WL 410413, at *6 and *Depuy Spine,* 534 F. Supp. 2d at 225-26.

> "I want to make clear that the claim construction language 'tend to resile' does not require any actual measurable lateral movement. . . . Arguments inconsistent with that claim construction are arguments that are improper as a matter of law"

The minutes from this hearing explicitly stated "***the claim construction language does not require that there be any movement***." (Dkt. No. 443, *Daubert* minutes).

Despite this Court's ruling, Arthrex attempted to argue to the jury that plaintiffs were ***required*** to show outward movement of the anchor in bone in order to prove infringement. During cross examination of Dr. Hayhurst, Arthrex's counsel asked a question about his reduction to practice of the invention suggesting that resiliency required outward expansion. (Exhibit 1, Re-Trial Trans. p. 222, lines 19-20). The plaintiffs' objection to this question was sustained by the Court. (Exhibit 1, Re-Trial Trans. p. 222, line 21 to p. 223, line 1). Arthrex's counsel, however, continued to improperly suggest that outward movement in the bone was required when it asked Dr. Hayhurst the following about Arthrex's anchors (Exhibit 1, Re-Trial Trans. p. 224, lines 8-12):

> "And as I understand it, sir, you do not have an opinion and do not know whether or not the Arthrex anchors ***flex outward in any manner so as to function resiliently in bone.*** You do not know whether they do that or not, as I understand it, correct?"

This question, again, was objected to and the objection sustained by the Court. (Exhibit 1, Re-Trial Trans. p. 224, lines 8-20).[7]

On a closely related issue, nothing in the Court's claim construction required any actual measurement of a force or movement for an anchor to infringe the '557 patent. (Exhibit 11, *Daubert* Trans. p. 78, line 13 to p. 79, line 5). However, Arthrex's counsel suggested to the jury that an actual measurement was ***required*** to infringe the '557 in his cross examination of Dr. Lisa Pruitt (Exhibit 1, Re-Trial Trans. p. 412, lines 5-9):

> "Do you agree with me that in addition to showing outward force or movement, ***Smith & Nephew must not only capture it and somehow measure it***, but show that it contributes to lodging? Do

---

[7] The violation here does not depend on Arthrex's actual success with the argument. It only concerns whether or not Arthrex suggested such improper constructions to the jury in the first place.

> you agree with that? Do you understand that that's part of this case?"

Arthrex's counsel also ignored the "tend to return" aspect of the Court's construction of "resile" & "resilient." The Court's claim construction explicitly states "[c]ompletely returning to a prior or original position, though included, *is not required*." (Dkt. No. 487 Jury Instruction No. 14). However, Arthrex's counsel continually tried to suggest the contrary, such as during cross examination of Dr. Wilson Hayes. Dr. Hayes had testified (Exhibit 1, Re-Trial Trans. p. 621, lines 4-7):

> "In each one of those local regions, it has deformed elastically, *come back part way*, and left evidence of its permanent deformation, just like we saw in the lateral compression."

Arthrex's counsel's response was to suggest to the jury that resiliency requires a *complete* return to a prior or original position (Exhibit 1, Re-Trial Trans. p. 621, lines 8-12). Indeed throughout the case, Arthrex and its counsel continually suggested that in order to infringe, the *entire* anchor must return to its *original* position. This was the very basis for its "permanent deformation" defense, in which *part* of the anchors did not return to their original shape.

**CONCLUSION**

For the foregoing reasons, the plaintiffs respectfully submit that this Court should grant this motion, declare the case exceptional under 35 U.S.C. § 285, and award plaintiffs their attorney fees and expenses. The plaintiffs further submit that at least some of these fees and expenses, *e.g*., all fees and expenses related to the two trials, should be paid jointly and severally by Arthrex and its lead counsel, with the remainder to be paid by Arthrex alone. Procedurally, the plaintiffs request to be allowed 30 days from the Court's granting of this motion to assemble and submit their detailed billing records, followed by 30 days for Arthrex's objections and 15 days for the plaintiffs' reply.

DATED:  July 28, 2008.

          CHERNOFF, VILHAUER, McCLUNG &
            STENZEL, LLP

          <u>/s/ Brenna K. Legaard</u>
          Brenna K. Legaard, OSB No. 00165
          Susan D. Pitchford, OSB No. 98091
          Telephone:  (503) 227-5631
          Of Attorneys for Plaintiffs

21990162.doc