IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SMITH & NEPHEW, INC. and
JOHN O. HAYHURST, M.D.,

        Plaintiffs,

  v.

ARTHREX, INC.,

        Defendant.

No. CV 04-29-MO

OPINION AND ORDER
Re: Plaintiffs' Motion for Treble Damages;
Motion for Exceptional Case Attorney Fees

**MOSMAN, J.,**

## INTRODUCTION

In this patent infringement case, plaintiffs prevailed at trial and also obtained a jury finding of willfulness. Plaintiffs now seek treble damages under 35 USC § 284, and attorney fees under 35 USC § 285. Because there are common issues, I discuss both motions in a single opinion. There is another related issue: Defendant moved for judgment as a matter of law on the issue of willfulness. I have already denied that motion. This establishes a benchmark for our current discussion that defendant's conduct was willful, or at least that a rational juror could so find. But that benchmark does not control the answer to these motions, in which I have some discretion whether, or to what degree, to increase damages, and whether to award attorney fees.

PAGE 1 - OPINION AND ORDER

For the reasons that follow, Plaintiffs' Motion for Treble Damages (#514) is DENIED, and Plaintiffs' Motion for Attorney Fees (#519) is DENIED.

## ANALYSIS

Section 284 grants district courts discretion to increase a damages award "up to three times the amount found or assessed." A finding of willfulness is a necessary, but not always sufficient, precondition for enhancement. A finding of willful infringement "does not mandate that damages be enhanced, much less mandate treble damages." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), abrogated on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995) (en banc). The primary consideration is "the egregiousness of the defendant's conduct" viewed in context with mitigating factors. *Read*, 971 F.3d at 826. The point is to deter intentional disregard of legal rights. Whether a case warrants such an enhancement is highly fact-specific. The parties agree, however, that a useful framework for looking at the issue is the nine-factor test in *Read*: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer formed a good faith belief the patent was invalid or not infringed; (3) the infringer's behavior as a party to litigation; (4) size and financial condition; (5) closeness of the case; (6) duration of misconduct; (7) remedial action; (8) motive for harm; and (9) attempts to conceal misconduct.

I will analyze each in turn.

1.  Copying

Plaintiffs admit they have no evidence that Arthrex copied the actual anchors. Instead, they focus on the fact that the '557 patent covers a method of using and installing such anchors, and that Arthrex's instructions to surgeons does in fact copy the method patent. Defendant contends the real focus of the trial was on the physical characteristics of the anchors, and therefore the question of copying should look at the same evidence.

Plaintiffs are technically correct that one typically copies a method patent by copying the method, not the embodiment. But on the specific facts of this case, looking at whether the

PAGE 2 - OPINION AND ORDER

instructions to surgeons copies the method doesn't really get at the gravamen of the harm. This case really is about a method that includes a particular kind of anchor -- a resilient anchor. In order to infringe, Arthrex would have to copy that kind of anchor. I found the testimony of Mr. Benavitz credible on the subject of how he came up with the idea of the Arthrex anchor. While at some point Arthrex's conduct ripened into willful infringement, it did not begin with copying. This factor favors Arthrex.

2. <u>Good-Faith Belief in Noninfringement</u>

The question of Arthrex's good faith belief in noninfringement is answered by the jury's verdict. It is, if not impossible, at least very difficult to reconcile the jury's verdict on willfulness with anything other than a lack of good faith belief in noninfringement. Arthrex advances two main arguments here. First, it argues that the state of the record at the time the infringement began supports, in various ways, a decision by Arthrex that it did not infringe. None of this is grounded in actual evidence in this case. The closest Arthrex comes is to cite the deposition testimony of John Schmieding. But we have been around the horn on this issue of advice of counsel several times. No patent opinion by Mr. Schmieding can support any litigative position Arthrex takes in this case. Because the jury verdict is not undercut by any evidence of good faith, and because Arthrex cannot rely on advice of counsel, this factor favors plaintiffs.

3. <u>Arthrex's Litigation Misconduct</u>

I do not intend to recite again the whole sordid tale of misconduct by counsel for Arthrex. Plaintiffs have made an adequate record of it in their pleadings. Suffice it to say that it was very bad, and that it began early on in the first trial and never really stopped. None of the usual tools a judge can employ seemed to help: cautions, warnings, instructions, open irritation, and calls to practice law at a professional level. Some combination of these is usually sufficient to create an atmosphere of mutual respect with the most obdurate of lawyers. None worked here. The misconduct was so blatant that it can only be characterized as directly disrespectful of the Court.

///

Nor is it sufficient to argue, as Arthrex now does, that it has already been sufficiently punished. The only real punishment occurred after the jury began deliberating, and thus had no impact on the trial. I also agree with plaintiffs' argument that it is fair to attribute this conduct directly to Arthrex. Arthrex's client representative, a lawyer, sat through it all. He never protested, and in fact quite often appeared amused.

I am not, however, persuaded that this factor strongly favors plaintiffs. The reason such behavior is a factor under § 284 is deterrence. But anyone with eyes to see would understand that such behavior should be deterred for another reason: Juries hate it. In almost 25 years as an active trial lawyer and judge, I have seen many different kinds of lawyers make their case to juries. Some were obligated to present arguments they knew would not be popular. But I have never seen a jury display such an open dislike of counsel as in this case. By the end of the second trial, jurors were raising their hands, asking me to request counsel to stop his misconduct. On the fourth day of the first trial, I told counsel he had forced me to decide whether he was being venal or stupid in disobeying my instructions. On that occasion, I chose the latter. Partway through the second trial, I chose the former. But as I watched the jury's reaction by the end of trial, I chose both. While I do not think this spilled over to the open detriment of Arthrex, it surely cannot help matters that Arthrex's counsel had lost all credibility with the jury. So, while there was a clear case of litigation misconduct, it may not have done plaintiffs any harm. For this reason, I find this factor favors plaintiffs, but only somewhat.

4.  Infringer's Size and Financial Condition

This factor is designed to calibrate the deterrent effect of enhanced damages to the size of the infringing company. It may well be true, in some cases, that no enhancement is necessary to accomplish full deterrence. In this case, very little specific financial information is before the Court. Defendant acknowledges both companies are large, profitable and successful. From the record available to me, there is nothing that counsels against enhanced damages based on defendant's size and financial condition. This factor somewhat favors plaintiffs.

PAGE 4 - OPINION AND ORDER

5. <u>Closeness of the Case</u>

The parties shed more heat than light on whether this case can be considered close. There is certainly objective evidence of closeness -- starting with a hung jury, and ending with reexamination by the USPTO. Plaintiffs suggest the first jury hung because of counsel's misconduct. I decline to speculate on ulterior motives for the jury not reaching a verdict. I assume they followed the Court's instructions and simply couldn't agree on the facts. My own view of the evidence is that each side had at least one strong argument in its favor that, if credited, would bring them victory. And each side did a fair job of discrediting key witnesses for its opponent. Nor does the jury's finding of willfulness erase the possibility the case was close. For these and other reasons, I find this was a close case and that this factor favors defendant.

6. <u>Duration of Infringement</u>

Arthrex acknowledges the behavior that resulted in infringement has continued throughout the pendency of this case. This factor favors plaintiffs.

7. <u>Remedial Actions</u>

Again, Arthrex acknowledges it has taken no remedial actions. This factor favors plaintiffs.

8. <u>Motive for Harm</u>

Plaintiffs have not suggested any motive other than an attempt to compete. Nor does my take on the evidence, including the content and demeanor of Arthrex's witnesses, lead to any other conclusion. This factor favors Arthrex.

9. <u>Attempts to Conceal</u>

Plaintiffs take some pains to show that Arthrex attempted to conceal its misconduct. Apparently, this involved not much more than a refusal to send plaintiffs free samples of its products or literature. This falls far short of concealment. In all other respects, Arthrex openly marketed its anchors and accompanying literature. This factor favors Arthrex.

///

PAGE 5 - OPINION AND ORDER

Of the nine factors, five favor plaintiffs and four favor Arthrex. Of the five for plaintiffs, two only favor them "somewhat." While the numerical nod goes to plaintiffs, it is only by a thin margin. The *Read* factors are very close to a tie.

This comports with my overall sense of the case. While the second jury found willful infringement, it was still a close case. There was none of the copying, concealment or destructive motivation present in the most egregious cases. For these reasons, and in the exercise of my discretion, I decline to enhance damages. Plaintiffs' motion (#514) is DENIED.

This same basic analysis applies to plaintiffs' request that I find this case exceptional, and award attorney fees. Therefore, plaintiffs' motion (#519) is also DENIED.

IT IS SO ORDERED.

DATED this  22nd  day of October, 2008.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge