**PETER E. HEUSER, OSB No. 811281**
**E-mail:  pheuser@schwabe.com**
**BRANTLEY C. SHUMAKER, OSB No. 065093**
**E-mail:  bshumaker@schwabe.com**
SCHWABE, WILLIAMSON & WYATT
1211 SW Fifth Avenue, Suite 1900
Portland, Oregon 97204
Telephone:  (503) 222-9981
Facsimile:  (503) 796-2900

**CHARLES W. SABER, admitted** *pro hac vice*
**Email:  saberc@dicksteinshapiro.com**
**SALVATORE P. TAMBURO, admitted** *pro hac vice*
**Email:  tamburos@dicksteinshapiro.com**
**MEGAN S. WOODWORTH, admitted** *pro hac vice*
**Email:  woodworthm@dicksteinshapiro.com**
**S. GREGORY HERRMAN, admitted** *pro hac vice*
**Email: herrmang@dicksteinshapiro.com**
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006
Telephone:  (202) 420-3116
Facsimile: (202) 420-2201

**ANTHONY P. CHO, admitted** *pro hac vice*
**Email:  acho@cgolaw.com**
CARLSON, GASKEY & OLDS, P.C.
400 West Maple Road, 350
Birmingham, Michigan 48009
Telephone:  (248) 988-8360
Facsimile:  (248) 988-8363

Attorneys for Defendant Arthrex, Inc.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **SMITH & NEPHEW, INC**, and **JOHN O. HAYHURST, M.D.**,<br><br>                              Plaintiffs,<br><br>          v.<br><br>**ARTHREX, INC.**,<br><br>                              Defendant. | Case No.  CV04-0029-MO<br><br>**ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION FOR ENHANCED DAMAGES UNDER 35 U.S.C. §284** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.   LEGAL STANDARD .............................................................................................4

IV.    ANALYSIS...............................................................................................................5

      A........Enhanced Damages Are Not Appropriate Because Arthrex Did Not Willfully
            Infringe the '557 Patent ...............................................................................5

      B........Even if the Finding of Willfulness Stands, Consideration of the *Read* Factors
            Confirms that Damages Should Not Be Enhanced ..................................6

           1..........Deliberate Copying ........................................................................7

           2..........Good Faith Belief of Non-Infringement .......................................7

           3..........Litigation Conduct .........................................................................9

           4..........Size and Financial Condition ......................................................11

           5..........Closeness of the Case....................................................................12

           6..........Remedial Actions and Duration of Infringement.......................14

           7..........Arthrex's Motivation ...................................................................14

           8..........Concealment of Infringement ......................................................15

V.     CONCLUSION......................................................................................................16

# TABLE OF AUTHORITIES

Page

Cases

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
228 F.3d 1338 (Fed. Cir. 2000)...................................................................................10

*Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*,
984 F.2d 410 (Fed. Cir. 1993)....................................................................................18

*Harris Corp. v. Fed. Express Corp.*,
6:07-cv-1819, 2011 U.S. Dist. LEXIS 96257 (M.D. Fla. Feb. 28, 2011)................................15

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007)................................................................................9, 10

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
489 F. Supp. 2d 1075 (N.D. Cal. 2007) ..........................................................................19

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge Gmbh v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004) (en banc)........................................................................12

*MercExchange, L.L.C. v. eBay, Inc.*,
275 F. Supp. 2d 695 (E.D. Va. 2003), *aff'd in relevant part*, 401 F.3d 1323 (Fed. Cir.
2005) ......................................................................................................................15

*Norian v. Stryker*,
363 F.3d 1321 (Fed. Cir. 2004)..................................................................................10

*Odetics, Inc. v. Storage Tech. Corp.*,
14 F. Supp. 2d 800 (E.D. Va. 1998) ...............................................................................18

*Odetics, Inc. v. Storage Tech. Corp.*,
185 F.3d 1259 (Fed. Cir. 1999)...........................................................................8, 9, 18

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)............................................................................. passim

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
355 Fed. Appx. 384 (Fed. Cir. 2009)........................................................................12, 15

*Smith & Nephew, Inc. v. Ethicon, Inc.*,
276 F.3d 1304 (Fed. Cir. 2001)..................................................................................12

DSMDB-2975638v2

*St. Regis Paper Co. v. Winchester Carton Corp.*,
    410 F. Supp. 1304 (D. Mass 1976) ......................................................................................15

*Stickle v. Heublein, Inc.*,
    716 F.2d 1550 (Fed. Cir. 1983)............................................................................................15

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..............................................................................................9

<u>Statutes</u>

35 U.S.C. § 284 ...................................................................................................... *passim*

35 U.S.C. § 298 .............................................................................................................13

## I.    INTRODUCTION

In 2008, plaintiffs Smith & Nephew and Dr. Hayhurst (collectively "S&N") moved for enhanced damages under 35 U.S.C. § 284, arguing, as it does here, that damages should be increased based on the jury's finding of willful infringement.  After weighing all of the appropriate factors, this Court appropriately denied the motion.[1]

As it did in 2008, this Court should deny S&N's Motion.  A fundamental problem with S&N's motion is that it is premised on the alleged willful infringement by Arthrex.  But as the Court has previously suggested,[2] and as explained in more detail in Arthrex's Memorandum in Support of Its Renewed Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b) ("Arthrex's JMOL Motion"), that finding is not legally supportable and should be reversed.  Without this predicate, S&N's Motion must fail.

But even if the Court were to permit the finding of willful infringement to stand—which Arthrex urges the Court not to do— S&N's Motion For Enhanced Damages Under 35 U.S.C. § 284 ("S&N Motion") should still be denied.  When the Court balances the *Read* factors (as it did in 2008), the Court should again conclude that these factors do not favor enhancing damages against Arthrex.  Even more so than in 2008, this is not the type of egregious case in which damages should be enhanced under Section 284, and certainly not by nearly $85 million, as requested by S&N.

---

[1]      Exh. 1 to the Declaration of Megan S. Woodworth In Support of Arthrex's Opposition to S&N's Motion For Enhanced Damages Under 35 U.S.C. § 284 ("Woodworth Decl."), at 6.

[2]      Exh. 2, Woodworth Decl., at 59-60.

## II.    BACKGROUND[3]

As this Court is aware, Arthrex, Inc. ("Arthrex") is a privately-held company that was founded in 1982 by Reinhold Schmieding, who is still the President of the company today.  Exh. 3, Woodworth Decl., Trial Tr. at 1295:4-11.  Contrary to S&N's assertions in its current Motion, Arthrex's original screw-in products were not unsuccessful.  Rather, Arthrex introduced some of the first bio-absorbable suture anchors to the market, including the Bio-FastTak, TissueTak, and Bio-Corkscrew products—each of which is a non-infringing device.  *Id.* at 1304:12-14; 1305:18-23.  Due to these products, Arthrex's market share in the shoulder fixation industry grew rapidly between 1999 and 2001.  *Id.* at 1331:3-16.  By 2001, before introduction of the allegedly infringing Bio-SutureTak, Arthrex was in second place in the suture anchor market (with a 31.4% share)—behind only Mitek (*a.k.a.* Johnson & Johnson)—and had "made a significant attempt to penetrate this market with the release of a number of new devices."  Exh. 4, Woodworth Decl., at 5.  S&N, on the other hand, had approximately 6% market share and did not "come[] close to challenging the two dominant market players" at this point.  *Id.*

In late 1999, Mr. William Benavitz, Arthrex's Group Manager, Upper Extremity, came up with the idea of combining the features of two of Arthrex's popular offerings to create a new shoulder fixation device.  Exh. 3, Woodworth Decl., Trial Tr. at 1306:22-1307:11.  Specifically, Mr. Benavitz envisioned combining the highly-successful molded-in suture eyelet[4] from the BioFastTak with the pound-in body of the TissueTak, which allowed surgeons to use their drill

---

[3]    S&N's Motion presents a lengthy background that largely comprises irrelevant and biased descriptions of the facts surrounding the inventions by Dr. Hayhurst and Arthrex.  In this Opposition, and without conceding the accuracy of any of S&N's statements, Arthrex rebuts only those statements that may be relevant to the Court in deciding this Motion.

[4]    *See* Exh. 5, Woodworth Decl., at 16 (S&N's BioRaptor Sales Guide, referring to the suture eyelet in the Bio-FastTak as "very smart").

and mallet for pound-in insertion.[5]  *Id.;* Exh. 6, Woodworth Decl.  The Bio-SutureTak product

development was officially launched in March 2000, and by late April 2000, Arthrex had a

completed design for the Bio-SutureTak anchor.  Exh. 3, Woodworth Decl., Trial Tr. at 1312:2-

1314:4; Exh. 7, Woodworth Decl., at 28.  At this time, neither Mr. Benavitz, nor anyone at

Arthrex knew about the '557 patent.  Exh. 3, Woodworth Decl., Trial Tr. at 1314:6-1314:12;

Exh. 8, Woodworth Decl.  Unlike the anchors in the '557 patent, the Bio-SutureTak anchor was

not designed to utilize resilience of the anchor to lodge the anchor within bone.  Exh. 9,

Woodworth Decl., 2008 Trial Tr., at 782:22-783:3; 783:23-784:9; 787:4-16; Exh. 3, Woodworth

Decl., 2011 Trial Tr. at 1298:23-1299:18; 992-96; 576; 1014:18-1017:9.[6]

        Arthrex became aware of the '557 patent in December 2000.  Exhs. 8 and 10, Woodworth

Decl.  Arthrex studied the patent and determined that its Bio-SutureTak product did not infringe

the patent.  *Id.*  Arthrex accordingly proceeded with the launch of its product in 2001.  At that

time, S&N did not allege that Arthrex was infringing the '557 patent.  In fact, it was not until

several years after Arthrex introduced the Bio-SutureTak that S&N first alleged Arthrex

infringed the '557 patent.  As S&N acknowledges, the day after being served with the Complaint

in this case, Arthrex's in-house counsel began working with its engineering team to test its

anchors to confirm to S&N that the products did not infringe.  Exh. 11, Woodworth Decl., at 7;

Exh. 12.  These tests did just that, concluding that the Bio-SutureTak anchors were not resilient

because "Bio-SutureTak does not deform during implantation."  *Id.*

---

[5]      Thus, S&N's assertion that Arthrex did not have a suture anchor with the insertion
mechanism of the Bio-SutureTak device is wrong.  Arthrex's design goal was to use the pre-
existing method from the TissueTak product.

[6]      Dr. Stephen Burkhart had similar testimony with respect to the design of the PushLock
anchors.  When he designed the PushLock, Dr. Burkhart had no knowledge of the '557 anchor.
Exh. 3, Trial Tr. at 1184:15-7.  In fact, Dr. Burkhart testified that the PushLock design would not
work if the anchors were resilient.  *Id.* at 1187:20-1190:13.

As this Court is aware, S&N's infringement claim against Arthrex has now been tried three times. The first time resulted in a hung jury. *See* Docket Entry 326. The second time, the jury returned a verdict for plaintiffs; however, that verdict was reversed due to an improper claim construction. During the recent third trial, the Court and parties agreed that further claim interpretation was necessary to give the jury appropriate guidance. Exh. 3, Woodworth Decl., Trial Tr. at 1468:10-11; 1472:8-11. For practical reasons, the case was ultimately tried under a construction consistent with S&N's position. S&N itself admitted that under Arthrex's construction (with which the Court acknowledged that it agreed), S&N was left with virtually no evidence to substantiate its infringement allegation. *Id.* at 1486:10-14. The Court indicated its view that Arthrex was likely to prevail even under the construction ultimately given to the jury. *Id.* at 1489:1-6. Arthrex has moved for Judgment as a Matter of Law that it did not infringe or willfully infringe the '557 patent.

## III.    LEGAL STANDARD

Upon a finding of willful infringement, a district court may, at its discretion, enhance the damage award. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999). "The law is clear that while willful infringement may allow enhanced damages, such a finding does not compel the district court to grant them." *Id.* "Instead, the decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances." *Id.* (citing *State Indus., Inc. v. Mor-Flo Indus.*, Inc., 948 F.2d 1573, 1576 (Fed. Cir. 1991)). The Federal Circuit has explained the "paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct…. The Court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

DSMDB-2975638v2

In *Read*, the Federal Circuit set forth a number of factors that courts may consider in deciding whether to enhance damages against an infringer. *Id.* at 827. The *Read* factors are: (1) presence of deliberate copying, (2) infringer's investigation and good-faith belief of invalidity or non-infringement, (3) litigation conduct, (4) infringer's size and financial condition, (5) closeness of case, (6) duration of the misconduct, (7) remedial action by the infringer, (8) infringer's motivation for harm, and (9) concealment. *Id.*

## IV.    ANALYSIS

### A.    Enhanced Damages Are Not Appropriate Because Arthrex Did Not Willfully Infringe the '557 Patent

As noted above, a necessary predicate to enhancing damages under Section 284 is that Arthrex's infringement of the '557 patent was willful. *Optics, Inc.*, 185 F.3d at 1274. S&N has not, and cannot, meet this standard. *See* Arthrex's Memorandum in Support of Its Motion for Judgment as a Matter of Law ("Arthrex's JMOL") (DI#989), at Section V.

To establish willful infringement, S&N was required to establish by clear and convincing evidence that Arthrex acted with "objective recklessness" to the asserted patent, meaning "the infringer acted despite an *objectively high likelihood* that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (emphasis added). Where, as here, the defendant's defenses are "susceptible to a *reasonable conclusion* of no infringement, the first prong of *Seagate cannot* be met," and the defendant is entitled to judgment of no willful infringement. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310-11 (Fed. Cir. 2011). Of course, Arthrex presented a defense that was far more than "reasonable," as this Court stated its belief during trial that Arthrex was "likely to prevail" (even under the claim construction favoring S&N's position). Exh. 3, Woodworth Decl., Trial Tr. at 1489. S&N itself acknowledged, under the construction of the claims proposed by Arthrex (which this Court

stated was the correct construction), S&N was left with virtually no evidence of infringement—let alone willful infringement. *Id.* at 1486:10-14.

S&N admits that its only evidence of the alleged willful conduct by Arthrex is that Arthrex knew about the patent prior to selling the accused products. In fact, S&N specifically told the jury in closing argument that this was sufficient to establish willful infringement:

> So we proved…that its infringement was willful because [Arthrex] knew about the patent, they ignored it, they did nothing.

*Id.* at 1686:14-18. This is legally incorrect, however, because the Federal Circuit has held as a matter of law—even prior to *Seagate*—that an "[a]ccused infringer's knowledge of [the] asserted patent, without more, is insufficient to support a conclusion of willfulness." *Norian v. Stryker*, 363 F.3d 1321, 1332 (Fed. Cir. 2004) (citing *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000).

Based on the facts as described above, and as explained in more detail in Arthrex's JMOL Motion and Opposition to S&N's Motion for Attorneys' Fees (*See* Docket Entry 993), S&N cannot establish either prong of *Seagate* is satisfied on this record. Because S&N cannot meet the necessary burden of demonstrating willfulness by clear and convincing evidence, the issue of enhanced damages under Section 284 must be resolved in Arthrex's favor. *State Indus., Inc.*, 948 F.2d at 1576-77.

  B.  Even if the Finding of Willfulness Stands, Consideration of the *Read* Factors Confirms that Damages Should Not Be Enhanced

As explained above, a finding of willfulness does not automatically lead to enhanced damages. Rather, such damages should only be awarded, in the Court's discretion, after considering the totality of the circumstances. As set forth above, the Federal Circuit has articulated nine *Read* factors to apply in determining whether (and by how much) to enhance

damages.  When the Court considers each of these factors, as it did in 2008, Arthrex submits it will conclude that enhanced damages are not warranted.

1.       Deliberate Copying

S&N's Motion does not mention copying as a *Read* factor.  This is likely because, as it admitted in 2008 and confirmed during the recent trial,[7] plaintiffs do not have evidence of copying by Arthrex.  Exh. 3, Woodworth Decl., Trial Tr. at 208:2-13.  In 2008, this Court found that this factor favors Arthrex because: "I found the testimony of Mr. Benavitz credible on the subject of how he came up with the anchor…it did not begin with copying."  Exh. 1, Woodworth Decl., at 2-3.  That finding is equally applicable here,  as it is undisputed that neither of the Arthrex inventors had knowledge of the '557 patent (nor did S&N have a product on the market covered by the patent) at the time of designing the accused products.  Exh. 3, Woodworth Decl., Trial Tr. at 1184:12-17; 1293:9-11; 1313:20-1314:20.  Accordingly, this factor favors not enhancing damages.

2.       Good Faith Belief of Non-Infringement

From the time that Arthrex learned of the '557 patent until today, Arthrex has maintained a good faith belief that the accused suture anchors do not infringe the '557 patent when used by surgeons.  When Arthrex first learned of the patent, through its *own* diligence and not from S&N, it studied the patent and determined that it did not infringe.  Exhs. 8 and 10, Woodworth Decl. As the "Summary of the Invention" section explains, the '557 patent relates to "a deformable anchor member that has a base and at least two legs….The anchor is formed of resilient material for urging the anchor member into a relaxed position wherein the ends of the legs are spaced apart."  Exh. 14, at 2:50-63.  Unlike the '557 patent, Arthrex's accused anchors were not

---

[7]       *See* Exh. 13, Woodworth Decl., at 5-6 ("Here, there was no allegation that Arthrex copied the physical structure of its accused anchors from the plaintiff….").

designed with legs or to utilize resiliency to cause lodging.  Exh. 3, Woodworth Decl, 2011 Trial Tr. at 1299:11-19; 1182:5-7; 1190; Exh. 9, 2008 Trial Tr. at 782:22-784:9.

In both instances where the Federal Circuit has considered the '557 patent, it similarly recognized that the '557 patent teaches an anchor with resilient legs and that the anchor resilience is the only disclosed means for causing the anchor to lodge.  *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1306 (Fed. Cir. 2001) ("The '557 patent is directed to a method of affixing a suture within a bone by inserting a suture anchor having resilient legs into a hole drilled into the bone.");  *Smith & Nephew, Inc. v. Arthrex, Inc.*, 355 Fed. Appx. 384, 386 (Fed. Cir. 2009) ("[I]ntrinsic resilience is the only disclosed means for lodging the anchor.").

Moreover, S&N acknowledges that, immediately after being served with the Complaint in this case, Arthrex performed testing which confirmed its belief of non-infringement.  Exh. 11, Woodworth Dec., at 7; Exh. 12, Woodworth Decl.  Since that time, Arthrex has hired technical experts that have performed various testing that continued to establish that Arthrex's good faith belief of non-infringement is correct.  *See infra* at 12-13.

S&N's suggestion that Arthrex did not have a good faith belief in non-infringement because it did not have an opinion of counsel that it produced in this case is both legally and factually inaccurate.  As S&N knows, Arthrex chose not to waive the attorney-client privilege and rely on the opinion-of-counsel defense in this case.  S&N's suggestion here impermissibly suggests that an adverse inference should be drawn from Arthrex's failure to disclose that opinion.  K*norr-Bremse Systeme Fuer Nutzfahrzeuge Gmbh v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc).[8]  Accordingly, this argument by S&N should not be given any weight.

---

[8]    The Patent Reform Act that was recently signed into law includes a provision that codifies in statute the *Knorr-Bremse* holding which prohibits this type of adverse inference from

Arthrex performed the type of investigation that favors not enhancing damages. Specifically, it looked into "the scope of the patent and formed a good-faith belief that it…was not infringed," and it has maintained that good faith belief throughout the pendency of this lawsuit. *Read, Corp.*, 970 F.2d at 826.

### 3.    Litigation Conduct

With respect to the next *Read* factor, S&N argues that there are three instances of litigation misconduct that warrant enhanced damages: (1) a purported change in defense regarding deformation; (2) trial misconduct in the earlier trials; and (3) pursuit of allegedly frivolous defenses.  The first and third of these are simply untrue; with respect to the second, the Court already found that this factor, based on action by Arthrex's trial counsel in 2007-08, "only somewhat" favors S&N in the *Read* analysis.

S&N's recitation of the testing performed by Ashley Holloway, an ex-Arthrex employee,[9] inaccurately reflects the record.  S&N argues that Arthrex "completely reversed" its non-infringement defense with respect to this deformation testing.  S&N Motion, at 10.  There was no change in position with respect to the deformation experienced by Arthrex's suture anchors.  Ms. Holloway's testing was performed with hand-held micrometers, which could not detect the microscopic level of permanent damage that MicroCT results confirm the suture anchors do experience after implantation in bone.  There is, therefore, no inconsistency between the two positions, both of which Arthrex has maintained throughout this litigation.  In fact, it was

---

failure to disclose opinion of counsel.  *See* H.R. 1249, 112th Cong. 2011 , at Section 17 (amending 35 U.S.C. § 298).

[9]    Ms. Holloway was an employee of Arthrex at the time that she performed the 2004 anchor deformation testing.  She has since ended her employment with Arthrex, but she continues to provide independent consulting to Arthrex.

S&N that changed its position between the 2007 and 2008 trials, asserting microscopic deformations as part of the lodging mechanism for the first time *after* the 2007 trial.

S&N makes it seem as though Arthrex either tried to hide evidence or run away from Ms. Holloway's test results. Quite the contrary, Arthrex produced all of the photographs and testing information that it has during this litigation, and it made Ms. Holloway available for deposition. In fact, Ms. Holloway, who found in her tests that Arthrex's anchors did not use anchor resilience to lodge, testified during the 2007 trial. Plainly, Arthrex would not have had Ms. Holloway testify about her tests if it had, as S&N claims, "completely reversed its non-infringement defense." S&N Motion, at 10.

With respect to the conduct of Arthrex counsel during the 2007 and 2008 trials, this Court, however, has already rejected that misconduct as a justification for enhancing damages, finding that "it may not have done plaintiffs any harm" and that it was a factor that "only somewhat" favors the plaintiffs. Exh. 1, Woodworth Decl., at 4. S&N has not offered any new argument that would cause this Court to reconsider that position. This factor cuts even less in S&N's favor now, because as S&N has since admitted, Arthrex's current trial counsel did not engage in misconduct during the 2011 trial. Exh. 11, Woodworth Decl., at 1. None of the alleged misconduct mentioned in S&N's Motion relates to Arthrex's new trial counsel.

Finally, S&N argues that Arthrex asserted numerous invalidity or inequitable conduct defenses that were either held unsuccessful or withdrawn prior to trial. S&N Motion, at 13-14. But S&N fails to establish that these defenses were baseless. In fact, several of these defenses were appealed up to the Federal Circuit, which like this Court, never suggested that Arthrex's

positions were frivolous.[10]  *See Smith & Nephew, Inc. v. Arthrex, Inc.*, 355 Fed. Appx. 384 (Fed. Cir. 2009).  Agressively defending a patent infringement action is not grounds for enhancing damages, particularly where neither party "comes to this stage in the case with perfectly clean hands."  *MercExchange, L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695, 720 (E.D. Va. 2003), *aff'd in relevant part*, 401 F.3d 1323, 1340 (Fed. Cir. 2005).

S&N presents no rationale for this Court to reconsider its 2008 finding that litigation misconduct is not sufficient justification for enhancing damages.  In view of S&N's admission that there was no misconduct at the recent trial, this should not be a neutral factor.

### 4.    Size and Financial Condition

The next *Read* factor looks at the size and financial condition of the defendant.  This factor requires a relative analysis, comparing the size and condition of the accused infringer to the patentee.  *Read, Corp.*, 970 F.2d at 827 (citing *St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F. Supp. 1304, 1309 (D. Mass 1976)).  In *St. Regis*, the court found that the fact that both parties were large and successful companies supported a lesser enhancement of damages than what was otherwise appropriate under its analysis.  *Id.*  Because S&N, like Arthrex, is a large, profitable company, this factor does not favor enhancing damages.

Even if this Court looks just at the financial condition of Arthrex, this factor is a "minor consideration" and, particularly where other factors are split, enhanced damages should not be awarded simply because defendant has deep pockets.  *MercExchange, L.L.C.*, 275 F. Supp. 2d at

---

[10]    S&N's argument that Arthrex's claim construction positions were frivolous also rings hollow.  Taking reasonable, albeit ultimately unsuccessful positions, does not warrant enhancing damages under Section 284.  *See e.g., Stickle v. Heublein, Inc*., 716 F.2d 1550, 1565 (Fed. Cir. 1983) (explaining that aggressive pursuit of defenses was not misconduct under Section 285 analysis absent evidence of pursuing "sham defenses for vexatious or dilatory tactics").  *Harris Corp. v. Fed. Express Corp.*, 6:07-cv-1819, 2011 U.S. Dist. LEXIS 96257 (M.D. Fla. Feb. 28, 2011) (not finding litigation misconduct despite the fact that "[defendant] pursued nearly every viable defense to the claims against it.").

720.  While Arthrex is profitable, it is not a multi-billion dollar company and does not have the

kinds of profits earned by such companies.  The $170 million-plus damage award that S&N is

seeking (with enhancement) *is* a significant amount for a company of Arthrex's financial size,

and it is not justified on this record.

### 5.    Closeness of the Case

In 2008, after a jury verdict for plaintiffs, this Court found that "this was a close case."

Exh. 1, Woodworth Decl., at 5.  During the recent re-trial after remand from the Federal Circuit,

this Court remarked that Arthrex was "likely to prevail," even under S&N's interpretation of the

claims. Exh. 3, Woodworth Decl., Trial Tr. at 1489:3-4.  And S&N itself acknowledged, under

the construction of the claims proposed by Arthrex (which this Court stated was the correct

construction), S&N was left with virtually no evidence of infringement.  *Id.* at 1486:10-13.

Notwithstanding its own admissions and these assertions by the Court, S&N contends

that this was not a close case in favor of S&N.  S&N bases its conclusion primarily on an

assertion that Arthrex chose only to attack the credibility of S&N's witnesses and presented

virtually no testing evidence or any meaningful evidence of non-infringement.  S&N Motion, at

18. S&N is wrong both legally and factually.  It is S&N, not Arthrex, that had the burden of

proving that Arthrex's anchors have sufficient resilience, by itself, to lodge.

As explained in its Motion for Judgment as a Matter of Law, Arthrex did far more than

attack the credibility of S&N's witnesses and evidence.  Arthrex put on overwhelming evidence

demonstrating that its accused suture anchors were not infringing.  Arthrex's evidence included

video demonstrations of insertion into both cortical and cancellous bone (DX 876) and several

sets of test results (including MicroCT tests, a 2010 drop-weight test, Dr. Greenleaf's "surgeon's

tug" test, and two sets of cortical/no cortical tests) that all establish that it is not the resilience of

the anchors that alone causes lodging of the accused anchors in the bone.  Exh. 3, Woodworth

Decl., Trial Tr., at 1019-1033, 1049-1057, 1261-65; Exhs. 15-20, Woodworth Decl.  And this

was in addition to the evidence showing that Arthrex anchors lodge without resilience, were

designed not to use resilience, and would not work if they were resilient.  Exh. 3, Woodworth

Decl., Trial Tr. at 992-96; 576; 1188-1190; 1015-17.

Finally, S&N argues that the case was not close because Arthrex's "primary argument"

regarding how its anchors lodge in bone—through interdigitation—was exposed as incorrect, and

that Arthrex's counsel had to "backpedal" from this argument.  S&N Motion, at 18-19.  Both

assertions are incorrect.  While the parties described the amount of interdigitation somewhat

differently,[11] there was no disagreement that interdigitation was part of the reason that the

Arthrex anchors lodge.  Exh. 3, Woodworth Decl., Trial Tr. at 569:7-19; 990:5-23; 996-1004.

Moreover, Arthrex did not backpedal from this as a factor that caused lodging; rather, Arthrex

consistently agreed with S&N that the Arthrex anchors lodge because of a combination of

interdigitation and bone resilience.  Exh. 9, Woodworth Decl., 2008 Trial Tr. at 366:1-368:1;

930:19-931:17; 996:20-2.  Similarly, it is because of these factors, bone resilience and

interdigitation, that the parties agreed that metal anchors of the same design as the Arthrex

anchors lodge without *any* anchor resilience.  *Id.*; Exh. 9, Woodworth Decl., 2008 Trial Tr. at

934:23-937:1; Exh. 3, 2011 Trial Tr. at 575:4-576:25; 1042:12-1044:19.

---

[11]     Even here, the parties' evidence was similar.  S&N's evidence showed at some locations pieces of the cancellous bone interdigitated into the ledges and at others places, there was little or no cancellous bone in the ledges.  But Arthrex never claimed that the cancellous bone interdigitated into every ledge or that the ledges completely filled the spaces.  Rather, Arthrex explained that, because of the nature of the cancellous bone, it was expected that the location and amount of bone interdigitating into the open spaces would vary.  Exh. 21, Woodworth Decl., at Fig. 1; Exh. 3, Woodworth Decl., Trial Tr. at 1024:12-1025:23.

The evidence at the most recent trial was not just close, it overwhelmingly favored Arthrex.  Accordingly, this factor favors no enhancement of damages.

### 6.    Remedial Actions and Duration of Infringement

The next two *Read* factors look to whether the defendant took remedial actions once it learned of the '557 patent and how long it infringed the patent.  As explained above, as soon as Arthrex learned of the '557 patent, it studied it and determined that the use of its suture anchors did not infringe the patent.  Accordingly, it did not need to make any changes to its products because it did not believe that any changes were necessary to avoid infringement.  The evidence developed during this litigation supports Arthrex's belief of non-infringement, so Arthrex has continued to sell the accused anchors.  In light of Arthrex's belief and defenses, these are "minor" factors.  This is not the type of egregious conduct that justifies enhanced damages, particularly where Arthrex "mounted a 'meritorious good faith defense and a substantial challenge to infringement.'"  *Odetics, Inc. v. Storage Tech. Corp.*, 14 F. Supp. 2d 800, 804 (E.D. Va. 1998) (quoting *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 413 (Fed. Cir. 1993)), *aff'd*, 185 F.3d 1259 (Fed. Cir. 1999).

### 7.    Arthrex's Motivation

S&N's attempt to portray Arthrex's motivation as warranting enhanced damages is unpersuasive.  S&N has no evidentiary support for its theory alleging "Arthrex's deliberate targeting of Smith & Nephew's market niche in the suture anchor market—plastic, push-in anchors."  As explained in more detail in Section VI of Arthrex's JMOL, the evidence shows that there is no "niche" or "sub-market" as S&N contends for plastic, push-in anchors.  Rather, this is a litigation-inspired market division that S&N's damages expert created without talking to a single surgeon and without any supportive, objective market data.  Exh. 3, Woodworth Decl., Trial Tr. 846:11-847:8.

S&N did not and cannot point to a single Arthrex document or statement that suggests Arthrex targeted S&N's so-called "niche" or "sub-market." Rather, the evidence shows that when Arthrex began selling the Bio-SutureTak anchors in late 2001, it was already in second place in the market based on its significant efforts to develop new products. Exh. 4, Woodworth Decl. S&N has acknowledged Arthrex's superiority at this time in product innovation, surgeon training and marketing efforts. Exh. 22, Woodworth Decl., 2007 Trial Tr. 612:4-614:8; Exh. 23, at pgs. 33-34. The evidence also shows that S&N's competitive product, the BioRaptor was not on the market when Arthrex began selling the Bio-SutureTak in 2001, but rather, it was introduced three years later in 2004. Exh. 3, Trial Tr. at 759:16-24.

The Court was aware of these facts when it concluded in 2008 that there was no motivation by Arthrex "other than an attempt to compete" and that "this factor favors Arthrex." Exh. 1, Woodworth Decl., at 5. The Court was correct in concluding that there was no bad faith motivation. Other courts have similarly concluded that even "aggressive attempts to compete are not, by themselves, evidence of bad faith" that justify enhanced damages under Section 284. *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075, 1085 (N.D. Cal. 2007).

### 8. Concealment of Infringement

S&N argues that Arthrex's alleged change in non-infringement defense and its failure to provide discovery for redesigned suture anchors evidence concealment of infringement that favors enhancing damages. Even if S&N's argument was an accurate reflection of the record, which it is not, this Court's previous finding on this factor still applies: "This falls far short of concealment." Exh. 1, Woodworth Decl., at 3.

Arthrex did not alter its non-infringement defense.  Arthrex has consistently maintained throughout the course of this litigation that its suture anchors do not have inherent resilience that results in macroscopic deformation during implantation.  *Supra*, at 7-8 and 12-13.  The suture anchors do, however, suffer some microscopic permanent damage during the insertion process.  These points are not inconsistent; Arthrex has not changed its position on this point; and this does not favor enhancing damages.

S&N's claims that Arthrex refused discovery of the redesigned PushLock and BioComposite SutureTak anchors stretches credibility.  The parties stipulated that these products would not be part of the current lawsuit.  If these products are relevant with respect to any *Read* factor, it would be to show remedial actions taken by Arthrex, because these products are further separated from the '557 patent.

As the Court found in 2008, there is no evidence of concealment of infringement and "[t]his factor favors Arthrex."  *Id.* at 3.

Analysis of all of the *Read* factors demonstrates that this is not an egregious case and that enhanced damages are not warranted.  As shown above, at least four factors clearly favor Arthrex and the remaining factors are either neutral or "minor."  The totality of the circumstances favors declining enhancement, even more so than in 2008, when this Court found the factors "very close to a tie" and declined to enhance damages.  *Id.* at 6.

## V.   CONCLUSION

For all of the foregoing reasons, S&N's Motion, seeking to enhance damages in S&N's favor, should be denied.

Dated: September 19, 2011              By:    _/s/ Charles W. Saber_____

                                       Charles W. Saber
                                       Salvatore P. Tamburo
                                       Megan S. Woodworth
                                       DICKSTEIN SHAPIRO LLP
                                       1825 Eye Street NW
                                       Washington, DC 20006-5403
                                       Tel: (202) 420-2200
                                       SaberC@dicksteinshapiro.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2011, I caused the foregoing **ARTHREX'S OPPOSITION TO PLAINTIFFS' MOTION FOR ENHANCED DAMAGES UNDER 35 U.S.C. §284** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record::

| **Counsel for Plaintiff Smith & Nephew Inc., et al.** | |
|---|---|
| Brenna K. Legaard<br>Susan D. Pitchford<br>CHERNOFF, VILHAUER, McCLUNG &<br>STENZEL, LLP<br>1600 ODS Tower<br>601 SW Second Avenue<br>Portland, OR 97204<br>Tel: (503) 227-5631<br>Fax: (503) 228-4373<br>Email:  brenna@chernofflaw.com<br>            sdp@chernofflaw.com | John M. Skenyon<br>Mark J. Hebert<br>Michael C. Lynn<br>Gregory R. Booker<br>FISH & RICHARDSON, PC<br>One Marina Park Drive<br>Boston, MA 02110-1878<br>Tel: (617) 542-5070<br>Fax: (617) 542-8906<br>Email:  skenyon@fr.com<br>            hebert@fr.com<br>            lynn@fr.com<br>            booker@fr.com |

Dated:  September 19, 2011            By:    /s/ Charles W. Saber                                     

                                                    Charles W. Saber
                                                    DICKSTEIN SHAPIRO LLP
                                                    1825 Eye Street NW
                                                    Washington, DC 20006-5403
                                                    Tel: (202) 420-2200
                                                    SaberC@dicksteinshapiro.com